895 So.2d 1241 (2005)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
HOLY CROSS HOSPITAL, INC., as assignee of Matthew Winik, Appellee.
Nos. 4D03-4534, 4D03-4537.
District Court of Appeal of Florida, Fourth District.
March 2, 2005.
Jack R. Reiter of Adorno & Yoss, P.A., Miami, and Richard C. Godfrey, P.C., and Andrew A. Kassof of Kirkland & Ellis LLP, Chicago, Illinois, for appellants Allstate Insurance Co. and Allstate Indemnity Co.
Peter J. Valeta of McGuire Woods LLP, Chicago, Illinois, for Amicus Curiae Florida Insurance Council, Inc.
*1242 George A. Vaka of Vaka, Larson & Johnson, P.L., Tampa, and Laura M. Watson of Watson & Lentner, Fort Lauderdale, for appellees Holy Cross Hospital, Inc., as assignee of Matthew Winik and Holy Cross Hospital, Inc., as assignee of Lawrence Wiesner.
STEVENSON, J.
These consolidated cases come to this court on a question certified by the Broward County court as one of great public importance:
Is an insurer required to comply with the provisions of section 627.736(10), Fla. Stat. in order to take preferred provider reductions in the payment of PIP benefits for medical services rendered to its insureds?
We answer the certified question in the negative and reverse the judgment of the lower court.

The Proceedings in the Lower Court
Lawrence Wiesner and Matthew Winik, both of whom are Allstate insureds,[1] were injured in separate automobile accidents occurring in 2001. Both Wiesner and Winik received medical treatment from Holy Cross Hospital, Inc. ("Holy Cross"). When Holy Cross submitted the medical bills to Allstate for the treatment and care provided Wiesner and Winik, Allstate failed to remit the entire amount billed and, instead, paid at a reduced "preferred provider" (PPO) rate. Allstate's payment at this reduced PPO rate was predicated upon contracts entered into by both Holy Cross and Allstate with a company called Beech Street, which establishes preferred provider networks. Believing that the existence of these contracts did not authorize Allstate to pay at the reduced PPO rate, Holy Cross filed suit, seeking declaratory relief and damages.
In a subsequently filed motion for summary judgment, Holy Cross asserted that a PIP insurer is permitted to pay at the reduced PPO rate only if that insurer has complied with section 627.736(10), Florida Statutes (2001), which provides in relevant part:
(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as "preferred providers".... The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy.
Since neither the Wiesner nor Winik policies were preferred provider policies and since Allstate had not contracted directly with any health care provider, Holy Cross insisted that Allstate could not take advantage of any reduced PPO rates and was, instead, required to pay eighty percent of all reasonable medical expenses as set forth in section 627.736(1).
*1243 For its part, Allstate did not disagree with Holy Cross's claims that it had not issued preferred provider policies nor complied with 627.736(10). Indeed, it was Allstate's position that it was precisely because it had not issued preferred provider policies that the statute did not apply. Moreover, the merits and the appropriate interpretation of section 627.736 aside, Allstate argued that it, not Holy Cross, was entitled to summary judgment in its favor on the grounds that (1) the plaintiff lacked standing; (2) under the doctrine of primary jurisdiction, the matter should first be considered by Florida's Department of Insurance; (3) the plaintiff had contractually agreed to the rate of compensation; (4) the suit should be dismissed for failure to join an indispensable party  Beech Street; and (5) the plaintiff had accepted payment without protest or objection and, thus, the suit was barred by the doctrines of accord and satisfaction and waiver.
At the outset of the summary judgment hearing, counsel for Holy Cross raised a number of procedural objections, including claims that the copy of the contract between Holy Cross and Beech Street filed by Allstate had not been properly authenticated and that Allstate had failed to file any copy  authenticated or not  of the contract between Allstate and Beech Street. After some discussion on this issue, it was agreed that resolution of these issues was not necessary because, even if it was assumed that all of the alleged contracts existed and that properly authenticated copies had been filed, this did not alter Holy Cross's contention that any such agreement, regardless of its terms, violated 627.736(10), Florida Statutes.
With these procedural objections out of the way, the court turned its attention to the merits. By the time of the summary judgment hearing, the Fifth District had issued its opinion in Nationwide Mutual Fire Insurance Co. v. Central Florida Physiatrists, P.A., 851 So.2d 762 (Fla. 5th DCA 2003), addressing the very issue pending before the court and siding with Holy Cross. As she was required to do, see Pardo v. State, 596 So.2d 665, 666-67 (Fla.1992), the county court judge followed the Fifth District's decision, ruling that section 627.736(10), Florida Statutes, "provide[s] the exclusive means by which an insurance company can contract to pay Preferred Provider rates (PPO rates) on Florida personal injury protection (PIP) automobile coverage." Counsel for Allstate then indicated to the court that it wished to obtain a final judgment and would "surrender" its affirmative defenses. This appeal from that final judgment followed.

The Decisions of the Fifth and Second Districts
At the time the county court judge rendered her decision, the Fifth District was the only appellate court to have addressed whether 627.736(10) sets forth the exclusive means by which a PIP insurer can avail itself of PPO rates. There, Central Florida Physiatrists (CFP) rendered medical care to a Nationwide insured injured in an automobile accident. Nationwide refused to pay the full amount charged by CFP, arguing that since CFP was a participating provider under a contract with Beech Street and since Nationwide was one of the insurers who had contracted with Beech Street, CFP was entitled to only the contractually agreed upon PPO rates. CFP filed suit against Nationwide, arguing that since Nationwide had not directly contracted with it nor complied with section 627.736(10), it was not entitled to pay at the reduced PPO rates. A county court judge found that section 627.736(10) provides the exclusive means by which an insurer can avail itself of reduced PPO rates, but certified the question to the *1244 Fifth District. The Fifth District agreed, offering the following rationale:
Section 627.736(10) provides the sole language relating to the availability of PPO benefits in PIP cases. Said language is precise and limited in scope, thereby indicating the legislature's intent that the availability of PPO PIP benefits is subject to strict compliance with the terms of subsection (10). The plain language of the statute states that an insurance company is permitted to contract with licensed healthcare providers for PPO benefits, but the statute provides no specific authority for insurance companies to contract with PPO networks.
851 So.2d at 765.
After the county court judge in this case rendered her decision, the Second District addressed this same issue in Nationwide Mutual Insurance Co. v. Jewell, 862 So.2d 79 (Fla. 2d DCA 2003), reaching the opposite conclusion. For its part, the Second District concluded that section 627.736(10) "does two basic things: (1) it authorizes PIP insurers to enter [into] contractual arrangements for the provision of preferred provider medical services; and (2) it authorizes PIP insurers to issue preferred provider PIP policies, subject to certain conditions and requirements." 862 So.2d at 84. The court found, first, that the statute's language did not limit insurers to entering into only direct contracts with providers and, second, that the first and second sentences should not be read together so as to permit only those PIP insurers who offer preferred provider policies to enter into contracts with health care providers. Having so interpreted the statute, the court held that Nationwide, the PIP insurer in the case, was entitled to pay the health care providers at the contractual rate to which the providers had agreed:
The appellant insurers have done nothing that is inconsistent with any provisions of the no-fault law. They have not attempted to require that any insured use a PPO provider....
Any contractual arrangements the insurers have made for paying certain providers at PPO rates have in no way adversely affected the services made available to the insureds under the PIP policies. If an insured used a PPO provider in a PPO network with which the appellant insurer had a contractual relationship, the only impact on the insured would be to save the insured money. Any insured using a PPO provider would have a copayment lower than the copayment that would be applicable if a non-PPO provider had been used. In addition, since each treatment provided by a PPO provider costs the insurer less than the same treatment given by a non-PPO provider, more services will be available to the insured within the $10,000 PIP policy limits provided for in section 627.736(1). The appellee providers argue that the appellant insurers have somehow undermined or altered the statutory scheme of the no-fault law. In light of the actual impact on the PIP insureds who may choose to use PPO providers, the appellees' argument rings hollow.
Id. at 86 (emphasis in original). The Second District certified conflict with the decision in Central Florida Physiatrists.
Not surprisingly, Holy Cross insists that the Fifth District's decision is the better reasoned, remaining truer to the statute's plain language and the legislative intent, while Allstate makes precisely the same claim regarding the decision in Jewell. In the end, though, we find the Jewell decision to be the more persuasive and align ourselves with the Second District on the issue. Accordingly, we certify conflict with *1245 the decision in Central Florida Physiatrists, answer the question certified by the county court in the negative, and reverse the summary judgment in favor of Holy Cross. The only issue that remains, then, is whether further proceedings are required on remand in light of our reversal. While we find that Allstate waived consideration of its affirmative defenses, it appears that there may be material issues yet to be resolved concerning the contracts between Beech Street and Holy Cross and between Beech Street and Allstate. This is so because the trial court expressly put aside any concerns or issues regarding the contracts in light of Holy Cross's insistence that the existence and contents of the contracts were simply irrelevant if 627.736(10) was the only vehicle by which a PIP insurer could pay reduced PPO rates. Accordingly, on remand, the trial court is free to address any outstanding contract issues.
REVERSED and REMANDED.
KLEIN and MAY, JJ., concur.
NOTES
[1] Wiesner was insured under an automobile policy issued by Allstate Insurance Company and Winik under a policy issued by Allstate Indemnity Company.